IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ARTHUR K. YARBROUGH,                          CV 08-6008-MA

       Plaintiff,                          OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

       Defendant.

JOHN A. HAAPALA, JR.
59 E. 11th Ave., Ste. 125
Eugene, OR 97401
(541) 345-8474

       Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158


1 - OPINION AND ORDER

RICHARD M. RODRIGUEZ
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-3748

      Attorneys for Defendant

MARSH, Judge.

     Plaintiff Arthur K. Yarbrough seeks judicial review of the Commissioner's final decision denying his December 27, 2004, applications for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.

     Plaintiff claims he has been disabled since August 1, 1996, because of back pain, insomnia, and depression.  His claim was denied initially and on reconsideration.  On March 22, 2007, the Administrative Law Judge (ALJ) held an evidentiary hearing and on April 27, 2007, issued a Notice of Decision that plaintiff is not disabled.  On September 25, 2007, the Appeals Council denied plaintiff's request for further review.  The ALJ's decision, therefore, was the Commissioner's final decision for purposes of judicial review.

     Plaintiff now seeks an Order from this court reversing the Commissioner's final decision and remanding the case for the payment of benefits.  For the following reasons, I **AFFIRM** the final decision of the Commissioner and **DISMISS** this action.

2  - OPINION AND ORDER

## THE ALJ'S FINDINGS

As an initial matter, the ALJ determined that plaintiff's disability onset date is June 26, 1999, not August 1, 1996, as alleged by plaintiff. Plaintiff does not challenge that determination.

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. Bowen v. Yuckert, 482 U.S.137, 140 (1987). See also 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

At Step One, the ALJ found plaintiff engaged in substantial gainful activity from 2000 through February 2004 and, therefore, cannot be found to be disabled for that time-period.

At Step Two, the ALJ found plaintiff suffers from severe impairments of degenerative lumbar disc disease changes, depressive disorder NOS, and chronic alcoholism presently in remission. 20 C.F.R. §404.1520(c) and §416.920(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found plaintiff's impairments do not meet or equal any listed impairment. Plaintiff has the residual functional capacity to perform medium work, including

3 - OPINION AND ORDER

lifting no more than 50 lbs at a time, frequent lifting of 25 lbs, sitting and standing six hours in an eight-hour work-day, pushing and pulling within those parameters, frequent balancing and climbing ramps and stairs, occasional crawling, crouching, kneeling, stooping, and climbing of ropes ladders, and scaffolds, as long as he has a sit/stand option. He is able to perform short, simple tasks and interact with the public occasionally.

At Step Four, the ALJ found plaintiff is unable to perform his past relevant work as a mill wood-stacker, car-wash attendant and cashier, or housekeeper.

At Step Five, the ALJ found plaintiff is able to perform other unskilled jobs that exist in significant numbers in the national economy, including hand packager, bench worker, small parts salvager, and sorter of packaged goods for routing.

Consistent with the above findings, the ALJ found plaintiff is not disabled and denied his claims for DI and SSI benefits.

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . .

has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  The duty to further develop the record, however, is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the

5  - OPINION AND ORDER

court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert.
denied, 121 S. Ct. 628 (2000).  "If additional proceedings can
remedy defects in the original administrative proceeding, a
social security case should be remanded."  Lewin v. Schweiker,
654 F.2d 631, 635 (9th Cir. 1981).

## ISSUES ON REVIEW

The issues are whether the ALJ erred in failing (1) to give
clear and convincing reasons for rejecting plaintiff's testimony,
(2) to give germane reasons for rejecting the lay witness
testimony of plaintiff's daughter, (3) to give clear and
convincing reasons for rejecting the medical opinions of treating
and examining physicians, and (4) to properly assess plaintiff's
residual functional capacity.

## PLAINTIFF'S TESTIMONY/EVIDENCE

This evidence is drawn from plaintiff's testimony at the
hearing and a work history report he completed in support of his
disability application.

Plaintiff was 54 years old on the date of the hearing.  He
has a High School GED.  He is homeless and unemployed.  For the
past three years he has had a place to eat and sleep at the
"Mission" in Eugene, in exchange for performing chores such as
making the coffee and straightening out chairs.  He occasionally
sleeps outside.

a.   **Work History**.

From 1993-2002, plaintiff worked as a car-wash attendant and cashier, during which he would stand and walk for eight hours a day, frequently lift up to 25 lbs and occasionally lift up to 100 lbs, stoop for up to five hours, reach for up to six hours, and handle/grab objects for up to eight hours each day.  That job ended when he suffered an on-the-job crushing injury to his hand.

Plaintiff then worked for approximately one month as a home attendant caring for a quadriplegic, preparing his meals, and taking care of his home.  After that job, he worked from March 2002 through February 2003, as a wood stacker/grader in a lumber mill.  The job involved walking, standing, stooping, reaching, and grabbing big objects eight hours a day, occasionally lifting 50 lbs and frequently lifting 30 lbs.  He quit the job because he could not do it any more.  Plaintiff last worked for two or three months in 2004 as a housekeeper for the University of Oregon, cleaning rooms and making beds in dormitories.  The job involved walking, standing, and grabbing big objects for eight hours a day, and spending a little less time reaching and stooping.  He would occasionally lift 50 lbs and frequently lift 25 lbs.

b.   **Medical Issues**.

In addition to his "drinking problem," Plaintiff has hypertension for which he takes medication.  The medication lowers his blood pressure to some extent.  He has had a serious

7  - OPINION AND ORDER

"drinking problem" but has not had a drink for four months, since he went to the Sacred Heart Medical Center Emergency Room because his heart was racing after a drinking bout.

Plaintiff has not had any surgical operations since a carpal tunnel release was done in 2001. He does not take pain or anti-depressant medications, although they are available to him, because he needs to be "extra alert" when he sleeps outdoors. He also is concerned that if he takes medications for high blood pressure and pain, he would not be sufficiently alert to be able to follow the Mission's rules and schedules, which he must do in order to eat and sleep there.

Plaintiff has had problems with his back for about five years. He has difficulty getting up in the morning, and when he climbs up and down stairs, he feels like the pain is choking him. He spends his time sitting down, although he gets up frequently to go for walks during the day to ease his discomfort. He walks up to 10-12 blocks at a time. He can only stand in one place for a few minutes.

Plaintiff has migraine headaches two or three times a month that last during the day and into the night. He takes Ibuprofen, which somewhat eases the pain. After a migraine headache, his neck and back are more sore. His sleeping pattern is disturbed because he tosses and turns and wakes up every couple of hours because of pain.

8 - OPINION AND ORDER

Plaintiff has suffered from depression for five years.  As a result, he has difficulty concentrating and when he is "stressed out," he feels nervous and finds it hard to breathe.  It is a little better now because he is not drinking.  He sometimes feels like his life is hopeless and he is worthless.  He has thought about "hurting" himself but has never attempted to do so.

**c.    Daily Activities**.

Plaintiff has not looked for work.  He visits his daughter three or four days a month.  He will occasionally do some minor housekeeping such as vacuuming at her home, and while there, he does his own laundry.  He would not be able to stand at the sink to wash dishes.

**LAY WITNESS EVIDENCE**

Plaintiff's daughter completed a questionnaire regarding her father's activities.  When he visits her, he tries to walk one hour each in the morning and evening, and otherwise watches television.  He feeds and plays with his grandchildren and walks the dog.  Her father is unable to lift things, stand for long periods of time, take long walks, or work long hours.  He only sleeps two hours at a time because of pain.  He is able to take care of his personal needs, take his medication, and prepare simple meals on a daily basis.  He helps with the laundry and mopping, which take about two hours, 2-3 times a week.  He shops

for groceries once a month.  His hobbies include watching television, spending time with his family, and taking short walks.  He is not as active as he was before the onset of his physical impairments.  He has difficulty climbing stairs, particularly if there is no railing.  He can lift 15-20 lbs, walk for 1/2 mile, and sit for ten minutes before he needs to move about to alleviate his pain.

Plaintiff does well following spoken instructions, dealing with authority figures, getting along with others, and handling stress and changes in routine.

<u>**MEDICAL EVIDENCE**</u>

a.    <u>**Medical Treatment**</u>.

**1. Benefis Healthcare.**

In April 2001, plaintiff suffered a crushing injury to his left hand when he caught it in a car-wash roller that causes the car to pass through the car-wash.  He complained of left hand pain.  On examination his hand and wrist were swollen and X-rays revealed a possible compression fracture of the left wrist and hand bones and a slight fracture of the 4th metacarpal bone in his hand.  Plaintiff underwent a successful fasciotomy with open carpal tunnel release.  Several days later, he underwent a skin graft on his left hand and forearm.  He tolerated the surgeries well and was discharged four days after his admission.

10 - OPINION AND ORDER

**2.  Keith Bortnem, D.O. - Osteopathic Physician**.

Dr. Bortnem provided plaintiff with follow-up care for his hand injury from August 2001-April 2002.  In April 2002, the hand looked "quite good" except for "a little disuse atrophy and some scars."  Dr. Bortnem noted plaintiff's grip strength was "diminished a little bit" and needed strengthening.  He concluded plaintiff had not suffered a "permanent impairment" to his hand as a result of the injury.

**3.  Sacred Heart Medical Center Emergency Room.**

From March 2003 until February 2007, plaintiff was treated in the Emergency Room on at least 11 occasions.  The first and second visits related to acute exacerbation of pain in his left wrist and right shoulder pain respectively.  The subsequent visits related either to injuries plaintiff sustained in falls or bouts of tachycardia (rapid heart beat), which were associated with alcohol intoxication, occasionally mixed with an overuse of Trazadone prescribed to treat plaintiff's depression.

**4.  White Bird Clinic - James Newhall, M.D.; Tom Akins, N.P.**

From January 2004 until February 2007, plaintiff received occasional treatment from the above medical practitioners for insomnia, anxiety, shoulder pain, headaches, and symptoms of high blood pressure.

In August 2006, Nurse Practitioner Akins diagnosed plaintiff as having a mood disorder with depressive features, and assigned

11 - OPINION AND ORDER

a GAF score of 55 (moderate difficulty in social, occupational, or school functioning).  In February 2007, Dr. Newhall noted plaintiff's transient episodes of acute pain were more frequent. He also "encouraged" plaintiff to comply with his treatment plan, which included taking Clonidine for more effective control of his high blood pressure.

**b.**   **Medical Examination - Peter Verhey, M.D.**

Dr. Verhey reviewed plaintiff's medical records and performed an examination in March 2005 to assess plaintiff's physical impairments, including complaints of low back pain, hypertension, migraine/tension headaches, and arthritis.  He concluded plaintiff most likely had mild to moderate degenerative changes in his lower back with muscle spasms, hypertension that was stable with medication, migraines probably related to hyper-tension or to the degenerative changes in his back, and mild degenerative changes in his hand and left ankle, related to arthritis.

Dr. Verhey opined plaintiff could sit, stand, or walk for six hours in an eight hour workday if he was able to vary his position frequently because of low back pain.  He could also lift and carry 50 lbs frequently.  He would be limited in his ability to flex, extend, or bend his lower back, or to crouch and stoop frequently.

**c.    Psychodiagnostic Assessment - Pamela Joffe, Ph.D.**

In March 2005, Dr. Joffe assessed plaintiff's mental status for the Oregon Department of Human Services.  She interviewed plaintiff, reviewed medical records, and performed achievement, intelligence, and memory testing.  During the interview, she noted plaintiff was "cooperative" but minimized his drug treatment, alcohol dependence, and current alcohol use.  His tests results reflect he is in the average range of intelligence, has a grade equivalent of 5.3, and is fully oriented, with an "adequate" score on Mental Control, and generally good scores as to memory.  His communication skills are strong.

Dr. Joffe assigned a GAF score of 50 (serious impairment in social, occupational, or school functioning).

**d.    Medical Consultation - Sharon Eder, M.D.**
**                        Martin Kehrli, M.D.**

Based on a medical records review, Dr. Eder opined and Dr. Kehrli affirmed that plaintiff is able to lift 50 lbs occasionally and 25 lbs frequently, stand or walk for six hours in an eight-hour workday; sit for six hours in and eight hour workday as long as he can alternate sitting and standing; push and pull on an unlimited basis; climb ramps/stairs and balance frequently; and  climb ladders/scaffolds, stoop, kneel, crouch, and crawl occasionally.

e.    **Pyschological Consultation -Peter LeBray, Ph.D.**
                                 **Karen Bates-Smith, Ph.D.**

Based on a medical records review, Dr. LeBray opined and Dr. Bates-Smith concurred that plaintiff suffers from an affective disorder (depression) and alcohol dependence (in remission) that mildly restrict his daily living activities. He has moderate difficulty in maintaining social functioning and maintaining concentration, persistence, or pace. As a result, his residual functional capacity to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, to interact with the general public, and to set realistic goals or make plans independent of others is moderately limited.

### ANALYSIS

a.    **Rejection of Plaintiff's Testimony**.

Plaintiff contends the ALJ failed to give clear and convincing reasons for not crediting his testimony regarding the severity of his impairments, including his subjective complaints of insomnia, hip and ankle pain, lack of appetite, radiating pain in his back, and his inability to engage in former hobbies, perform chores, or walk for more than five minutes.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to

14 - OPINION AND ORDER

produce the pain or other symptoms alleged. . . .'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)). See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986). The claimant need not produce objective medical evidence of the symptoms or their severity. Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying impairments could cause the pain complained of and there is no affirmative evidence to suggest the claimant is malingering, the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of his symptoms. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283. To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

Here there is no evidence of malingering. The ALJ, however, found that although plaintiff's medical impairments may produce his symptoms, including back pain, depression, and memory

15 - OPINION AND ORDER

deficit, his statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." I agree. The ALJ specifically noted, _inter alia_: (1) plaintiff's description of his daily activities was more restrictive than those described by his daughter; (2) he gave an inconsistent history of an alleged tour of duty in Vietnam; (3) he failed to disclose he was discharged from the Army after only one year of service under less than honorable circumstances; and (4) he has failed to comply with his doctors' recommendations to take medications to ease his back pain and depression.

On this record, I conclude the ALJ gave clear and convincing reasons for not entirely crediting plaintiff's testimony regarding the severity of his physical and mental impairments.

**b.    Rejection of Lay Witness Evidence.**

Lay witness evidence as to a claimant's symptoms "is competent evidence that an ALJ must take into account" unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." _Lewis v. Apfel_, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ found the lay evidence of plaintiff's daughter was credible in some respects, particularly relating to plaintiff's ability to lift at least up to 20 lbs, and his activities in performing housekeeping chores, playing with and tending to his grandchildren, shopping, and walking. The ALJ did not entirely

16 - OPINION AND ORDER

reject her testimony, but did state that he relied more heavily on the medical evidence regarding plaintiff's residual functional capacity to the extent it suggested plaintiff was less impaired than indicated by plaintiff's daughter.  The ALJ's greater reliance on medical records in determining plaintiff's residual functional capacity was a germane reason for not entirely accepting the lay witness evidence.

c.    **Rejection of Medical Opinions**.

The opinions of treating physicians should be credited as true if the ALJ fails to provide clear and convincing reasons for rejecting them.  See Smolen v. Chater, 80 F.3d 1273, 1992 (9th Cir. 1996).

Plaintiff contends the ALJ improperly rejected the opinions of treating physicians who examined plaintiff on one or more of his many visits to the Emergency Room for a multitude of complaints, generally arising from his back pain, but almost always associated with alcohol intoxication.  He also contends the ALJ failed to adequately consider Dr. Newhall's medical reports.

None of the treating doctors, however, offered opinions regarding plaintiff's ability to work over the long term, or described any specific functional limitations that would preclude plaintiff from engaging in some form of work.

On this record, I conclude the ALJ fully set forth and

properly accounted for all the relevant medical evidence.

**d   Inadequate Assessment of Residual Functional Capacity.**

Plaintiff contends the ALJ failed (1) to perform a function-by-function assessment of his residual functional capacity, and (2) to consider his medical-vocational profile.  I disagree.

**1.   Function-by-Function Assessment.**

The ALJ is required to determine a claimant's residual functional capacity based on a function-by-function assessment in light of the record as a whole.  "[A]n RFC assessment is the [ALJ's] ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)."  SSR 96-5P, 1996 WL 374183 (Jul. 2, 1996).

As set forth above, the ALJ addressed the medical evidence of the treating, examining, and consulting physicians, and identified each of the physical and mental impairments as to which there was substantial evidence of functional limitations. The ALJ adequately accounted for those limitations in his disability analysis and in his assessment of plaintiff's residual functional capacity.  None of the medical providers, examiners, or consultants offered opinions or even suggested in their medical reports that plaintiff had physical or mental impairments that were incompatible with plaintiff's residual functional capacity as found by the ALJ.

18 - OPINION AND ORDER

**2. Medical-Vocational Profile.**

Plaintiff was 54 years old on the date of the Commissioner's final decision finding he was not disabled.  Plaintiff contends the ALJ did not consider medical-vocational profiles to determine if plaintiff would be able to make an adjustment to other work in light of his marginal education, past relevant work, and age.

(i)  Marginal Education/Arduous Unskilled Physical Labor.

Under 20 C.F.R. §404.1562(a), a claimant is entitled to disability benefits if he has performed only arduous unskilled physical labor for 35 years or more, has no more than a marginal education, and is unable to perform this past work.

A marginal education results in an "ability in reasoning, arithmetic, and language skills" arising from "formal schooling at a 6th grade level or less."  20 C.F.R. § 404.1564(b)(2).  Plaintiff has a high school GED.  Although his arithmetic skills are only at a 5th grade level, there is no evidence his reasoning and language skills are at or below a 5th grade level.  Plaintiff scored in the average range on IQ tests, and did well on memory tests.  Plaintiff has more than a "marginal education."

Plaintiff's work history does not fall within this limitation because his past relevant work includes semi-skilled light work as a car-wash cashier.

19 - OPINION AND ORDER

(ii)  <u>Age</u>.

Under 20 C.F.R. §404.1562(b), a claimant is entitled to disability benefits if he is 55 years old, has no more than a limited education, and has no past relevant work experience. Plaintiff was almost 55 years old when he was found not disabled. His age, therefore, was a factor to be considered in the disability analysis.  <u>See</u> 20 C.F.R. §416.963(b)(the Commissioner "will not apply the age categories mechanically in a borderline situation.").  Plaintiff's age is not a factor, however, because he has past relevant semi-skilled work experience as a cashier.

For these reasons, I conclude plaintiff does not meet an age-related medical-vocational profile by which he would be considered disabled.

<u>**CONCLUSION**</u>

For all the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is **AFFIRMED** and this matter is **DISMISSED** with prejudice.

IT IS SO ORDERED.

DATED this 22 day of April, 2009.


 /s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge


20 - OPINION AND ORDER

21 - OPINION AND ORDER